# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLENTOWN WOMEN'S** | : | |
| **CENTER, INC.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 19-1571** |
| | : | |
| **ANTHONY J. SULPIZIO, et al.** | : | |
| | : | |
| *Defendants.* | : | |

## MEMORANDUM

## I.  BACKGROUND

Plaintiff Allentown Women's Center, Inc. ("AWC") has moved for a

preliminary injunction against Defendants Anthony Sulpizio and Mark

Bogunovich[1] to prevent alleged ongoing violations of the Freedom of Access to

Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, and related state law claims and

to have the Court enjoin Defendants from coming within a "buffer zone" of 25 feet

extending in all directions around any of the driveway entrances onto the public

right-of-way.  ECF No. 3, 3-2.

---

[1] Plaintiff originally filed its Complaint, ECF No. 1, and its Motion for Preliminary Injunction, ECF No. 3, against a third, self-represented Defendant, John Dunkle.  This Court dismissed all claims against John Dunkle sua sponte, finding that the claims against Dunkle were state law trespass claims and the pleadings did not establish a conspiratorial connection between Dunkle and the other Defendants.  ECF No. 51.

Plaintiff has alleged in its Complaint and Motion for Preliminary Injunction, as well as introduced evidence at the Preliminary Injunction Hearing seeking to show, that Sulpizio violated FACE by engaging in the use of force and making threats of force and both Sulpizio and Bogunovich violated FACE by engaging in physical obstruction to injure, intimidate, or interfere with AWC staff and patients who are seeking to provide or obtain reproductive health care services at AWC. *See generally* ECF Nos. 3-1, 79-80.

Defendant Bogunovich contends that the Motion for Preliminary Injunction seeking to prohibit his alleged physical obstruction should be denied because he is engaged in "First Amendment protected sidewalk counseling," that "he has a lawful and constitutional right" to "raise his arm in an effort to convince cars to stop and speak with him" since he is standing on the "public right of way," and that he does not intentionally walk slowly across the AWC drive to physically block access to AWC. ECF No. 42 at 3. Defendant Sulpizio contends that the Motion for Preliminary Injunction seeking to prohibit his alleged use of force, threat of force, and physical obstruction should be denied because he has "not engaged in force, threat of force, or physical obstruction in violation of FACE" and that Plaintiff's preliminary injunction seeks to improperly require Defendant Sulpizio to "stand where [his] pro-life message can no longer be conveyed effectively." ECF No. 46 at 17.

2

## II. PROCEDURAL HISTORY

Plaintiff filed a motion for preliminary injunction on April 11, 2019 against Anthony Sulpizio and Mark Bogunovich to prevent alleged ongoing violations of FACE and other state law claims and to prevent Defendants from coming within a 25-foot buffer of the AWC entrances. ECF No. 3. Defendant Sulpizio responded on May 28, 2019. ECF No. 46. Defendant Bogunovich responded on May 28, 2019. ECF No. 42. Plaintiff filed its replies in support of its Motion for Summary Judgment on June 21, 2019. ECF Nos. 62, 64.

This Court held a status conference on May 29, 2019 after the Motion for Preliminary Injunction and responses were filed to discuss the status of the briefing and the scheduling of a preliminary injunction hearing. ECF No. 48. The parties determined that the primary evidence at issue at this preliminary injunction hearing would be testimony from the five witnesses identified in the Complaint and the two Defendants, along with security videos that Plaintiff had recorded at the AWC, videos possessed by any witnesses, along with any videos possessed by Defendants.

This Court held a preliminary injunction hearing ("Preliminary Injunction Hearing") on June 26 and 27, 2019.

3

## III. FINDINGS OF FACT

1.    The two remaining Defendants, Anthony Sulpizio ("Sulpizio") and Mark
Bogunovich ("Bogunovich") (together "Defendants"), are regular protesters and
self-proclaimed sidewalk counselors at the AWC, who stand at the two entrances
of the AWC and attempt to stop individuals in cars who are coming to the AWC
for an appointment and engage them in conversation about abortion. ECF No. 79
at 261; ECF No. 80 at 12-13, 21.

2.    Sulpizio has been going to the AWC to protest and as a self-proclaimed
sidewalk counselor for 6.5 years and currently protests at the AWC four times a
week, for 10-11 hours per week. ECF No. 80 at 24.    ECF No. 80 at 24.

3.    Bogunovich has been going to the AWC to protest and as a self-proclaimed
sidewalk counselor since 2011 and currently protests at the AWC for about 1-2.5
hours every Thursday, Friday, and Saturday. ECF No. 79 at 262-3.

4.    Although both Sulpizio and Bogunovich are both regular protesters at the
AWC, the evidence thus far has shown that the two protesters are not similar in the
way that they communicate with AWC patients and staff.

5.    As discussed further below, there is no evidence that Bogunovich uses any
inappropriate language towards the patients or AWC staff while he is protesting
but rather will make comments about "hell and repentance," and "religious

4

statements [about] burning in hell [and] eternal damnation." ECF No. 79 at 109, 163.

6.     Sulpizio, on the other hand, and as shown below, regularly yells obscenities at the AWC staff while he is protesting or leafletting, including yelling "very upsetting things," "insult[ing]" the staff, "sham[ing] [them] for [their] body shape and size," asking if an employee was "having sex on [her] desk in [her] office with another employee," yelling at an employee's son who was visiting the AWC stating "aren't you glad that when your father had your mother up on the bed with her feet in the stirrups that he didn't suck you out," as well as yelling many other "racial, homophobic [and] transphobic slurs," which the AWC staff face from Sulpizio every time they come to the AWC. ECF No. 79 at 102-3, 162, 169.

7.     The videos and evidence show that Sulpizio attempts to bait the AWC employees to respond by yelling curse words and making vulgar comments to them as they drive in or out of the AWC parking lot or as they walk between the AWC and their car.

8.     At the Preliminary Injunction Hearing, Plaintiff introduced five witnesses, all of whom were volunteers or employees of AWC.

9.     Escort Stiles, who testified under this pseudonym, is a volunteer escort at the AWC whose job is to help the clients get into the AWC. ECF No. 79 at 9. Escort

5

Stiles has been volunteering at AWC for about four years and regularly volunteers at the AWC every Saturday from 9:00 a.m. to 12 p.m. *Id.* at 10.

10.    Nurse Doe, who testified under this pseudonym, is the Chief Operating Officer of AWC and has worked at AWC from 1994-1998 and then since 2011. *Id.* at 91. In addition to being AWC's Chief Operating Officer, Nurse Doe is a registered nurse. *Id.*

11.    Dr. Roe, who testified under this pseudonym, is an obstetrician/gynecologist who has been working at the AWC since 2000 and is currently employed as the Medical Director of the AWC. *Id.* at 158-159.

12.    Escort Smith, who testified under this pseudonym, has been an escort volunteer at AWC since 2004. *Id.* at 195.

13.    Employee 1, who testified under this pseudonym, works at the AWC at the front desk and as a transition health advocate, among other positions. *Id.* at 229. Employee 1 has been working at AWC since March 2017 and currently works 5-6 days per week at the clinic. *Id.* at 230.

14.    Plaintiff produced a video of the interaction between Sulpizio and AWC escorts from April 15, 2017, labeled Plaintiff's Exhibit No. 2. ECF No. 79 at 39. The Court finds that the video shows as follows: First, Sulpizio is standing at the left side of the Courtney Street entrance and, as a car pulls up, Sulpizio approaches the driver's side window with a piece of paper, which Sulpizio hands to the driver.

6

Sulpizio leans to the driver's side window, points to AWC and begins to talk to the driver. Sulpizio stands up straight but continues to communicate with the driver for about 18 seconds, until three AWC escorts appear at the bottom of the frame, coming from the AWC, motioning to the car to pull farther into the driveway. Sulpizio continues to talk to the driver as the three escorts walk quickly down the driveway toward Sulpizio and the car. When the first AWC escort, Escort Stiles, reaches the end of the driveway, the car pulls forward slightly, and Sulpizio and Escort Stiles approach the driver's side window at the same time, both seemingly trying to communicate with the driver. Escort Stiles and Sulpizio then face each other and exchange words, then Escort Stiles tries to move back toward the driver of the car, when Sulpizio continues to face Escort Stiles and pushes swiftly against Escort Stiles's head, knocking Escort Stiles's hat off. After this happens, one of the other two escorts gets between Escort Stiles and Sulpizio and the third escort goes to the passenger side of the car and indicates that the driver should move forward. At the same time, two more escorts walk down the driveway, the car pulls forward, and then all five escorts walk behind the car back toward the AWC, some of whom turn around and talk to Sulpizio as they walk away. Sulpizio seems to respond to them as he paces across the entrance.

15. At the Preliminary Injunction Hearing, Plaintiff introduced several videos of Bogunovich and Sulpizio standing at the entrances to the AWC, either protesting,

discussing or attempting to discuss with drivers pulling in to the AWC. The videos show that Bogunovich and Sulpizio stand near the edges of the entrances on both South Commerce Way and Courtney Street and occasionally walk from one side of the entrance to the other side. When a car pulls up, one of the Defendants, depending on who is in the video, puts their hand up, approaches the car and either begins to speak with the driver in an attempt to engage in conversation or hands them a piece of paper and then attempts to engage in conversation.

16. For example, in Plaintiff's Exhibit No. 6, the video show Bogunovich standing at the edge of the Commerce Way entrance of AWC until a car pulls up to the entrance of the AWC parking lot. When the car pulls up, Bogunovich goes to the driver's side window to talk to the driver. After about three seconds, he backs up and the car passes through. Another car immediately behind the first car pulls up, and he approaches the driver's side window of that car. He talks to that driver for three seconds, then backs up, and that second car passes through. During his discussion with the driver of the second car, another car pulls up behind that second car, blocking oncoming traffic. When that third car pulls up, Bogunovich waves to the car, while two other protesters walk behind the car, but the car continues without stopping. After the car passes through, the three protesters stay in the middle of the entrance for three seconds talking before moving to the side of the entrance.

17. As another example, Plaintiff's Exhibit No. 8 shows Sulpizio standing to the right of the driveway. As a car quickly pulls in close to the right side of the entranceway, Sulpizio moves swiftly towards the passenger side of the car, but the car does not stop and keeps moving at a high speed. Sulpizio stands to the right side of the entrance for the rest of the video.

18. For a final example, the video marked as Plaintiff's Exhibit No. 3 shows Sulpizio standing at the Courtney Street entrance, walking back and forth between the two sides of the entrance, pausing at each side of the entrance, and occasionally changing directions midway through his walk across the entrance. Eventually, Sulpizio begins discussing with another protester. At one point during their discussion, a car drives through the entrance, but neither protester approaches the car. When a second car drives in, Sulpizio approaches the driver's side of the car and hands the driver something, all of which takes about three seconds. Sulpizio goes back to the edge of the entrance with the other protester. Both Sulpizio and the other protester walk away from the entrance for a couple minutes but return once a car pulls up. As that car pulls up, the other protester approaches the driver's side window, leans down to discuss with the driver, and, after about five seconds, the driver pulls away. The two protesters go back to the edge of the entrance together, but then separate and go different ways. The rest of the video shows similar behavior, with Sulpizio standing on the edges of the entrance, walking back

9

and forth across the entrance at a casual pace, but never stopping in the middle nor walking at an unreasonably slow pace.

19. Both Plaintiff and Defendants introduced additional videos showing Sulpizio talking to and yelling at AWC staff. The Court finds that Sulpizio made the following statements while outside the AWC:

20. Sulpizio told Employee 1 that you can be killed for being a faggot. *Id.* at 233.

21. Sulpizio told Escort Smith that she had a "Hee-Haw" laugh and then told her that the actor from Hee-Haw died. *Id.* at 203-204.

22. Sulpizio told an unidentified female AWC employee, "Your life doesn't matter, "you're a baby killer," and "come on back here, you cunt." Exhibit A, Stipulated Transcript of Preliminary Injunction Hearing Exhibit 26.[2]

## IV. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "Awarding preliminary relief, therefore, is only appropriate 'upon a clear

---

[2] The Court required the parties to stipulate to a transcript of Exhibit 26, which the Court has attached as an exhibit (Exhibit A) to this memorandum. *Id.*

10

showing that the plaintiff is entitled to such relief.'" *Groupe SEB USA*, 774 F.3d at 197 (quoting *Winter*, 555 U.S. at 22).

"[T]o obtain a preliminary injunction[,] the moving party must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . In addition, the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (internal alterations omitted).

The Third Circuit has held that the first two factors act as "gateway factors," and that a "court must first determine whether the movant has met these two gateway factors before considering the remaining two factors—balance of harms, and public interest." *Fulton v. City of Philadelphia*, 320 F. Supp. 3d 661, 675 (E.D. Pa. 2018), *aff'd*, 922 F.3d 140 (3d Cir. 2019) (citing *Reilly*, 858 F.3d 173, 180 (3d Cir. 2017)).

11

## V. DISCUSSION AND CONCLUSIONS OF LAW

### A. Reasonable Probability of Eventual Success in The Litigation

To show the first gateway factor required for a preliminary injunction, a
reasonable probability of eventual success in the litigation, Plaintiff "must
demonstrate that it can win on the merits (which requires a showing significantly
better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d
at 176.

Plaintiff contends that, through its Motion for Preliminary Injunction and the
evidence presented at the Preliminary Injunction Hearing, it has shown a
reasonable probability of eventual success in proving Defendants Sulpizio and
Bogunovich violated FACE. ECF No. 3-1 at 11-14; ECF No. 80 at 77.

FACE is "view-point neutral," and "governs conduct not speech." *United
States v. Gregg*, 226 F.3d 253, 267–68 (3d Cir. 2000) (citing *Terry v. Reno*, 101
F.3d 1412 (D.C. Cir. 1996)). FACE prohibits "**force,**" "**threat of force,**" and
"**physical obstruction**" that attempts to or "intentionally injures, intimidates or
interferes with . . . any person because that person is . . . obtaining or providing
reproductive health services . . ." 18 U.S.C. § 248.

FACE prohibits force, threat of force, and physical obstruction, and
"[a]ctivities that injure, threaten, or obstruct are not protected by the First
Amendment, whether or not such conduct communicates a message." *Gregg*, 226

12

F.3d at 267-268. Although certain actions may intimidate, these actions only violate FACE if they also constitute a use of force, a threat of force, or physical obstruction. 18 U.S.C. § 248(a)(1); *see also United States v. Dillard,* 795 F.3d 1191, 1203 (10th Cir. 2015) ("FACE is violated **when an individual uses force or threats of force** to injure, intimidate or interfere with someone 'because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.'") (emphasis added).

Under the statute, "'**interfere with**' means to restrict a person's freedom of movement," "'**intimidate**' means to place a person in reasonable apprehension of bodily harm to him- or herself or to another," and "'**physical obstruction**' means rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C.A. § 248(e)(2)-(4) (emphasis added).

In its Motion for Preliminary Injunction, and through the evidence it presented at the Preliminary Injunction Hearing, Plaintiff contends that Defendants Sulpizio and Bogunovich violated FACE because Defendant Sulpizio struck an AWC volunteer in the head on April 15, 2017, constituting force in violation of FACE, because Defendant Sulpizio's "conspicuous photography and ominous warnings of injury directed to AWC staff and volunteers place them in reasonable

13

fear of bodily harm," constituting threat of force within the meaning of FACE, and because Defendants Sulpizio and Boguovich walk slowly in front of cars arriving at the AWC, constituting physical obstruction in violation of FACE. ECF No. 3-1 at 10-14; ECF No. 80 at 77-81, 86.

### 1. Use of Force under FACE

Plaintiff argues first that it can show a reasonable probability of eventual success in the litigation against Sulpizio for his alleged use of force against an AWC escort in April 2017. ECF No. 3-1 at 7. Plaintiff contends that because force is not defined in FACE, "'it is fundamental that [it] will be interpreted as taking [its] ordinary, contemporary, and common meaning.'" *Id.* at 11 (quoting *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006) (citations and quotations omitted)). Plaintiff asserts that the court in *Cain* held that "force is broadly defined as power, violence, or pressure directed against a person or thing, [and] it is not limited to violent or assaultive force." *Id.* (quoting *Cain*, 418 F. Supp. 2d at 473 (internal quotations omitted)). The court in *Cain* found all three elements of FACE were satisfied where defendant "came up to an escort volunteering at the Center, pressed his body into the escort, and pushed the escort when the escort told him to move away." *Id.* (quoting *Cain*, 418 F. Supp. 2d at 473 (internal quotations omitted)).

14

Plaintiff contends that Sulpizio's actions in April 2017 where "Sulpizio physically pushed an AWC volunteer escort away from the car window of a person attempting to enter the AWC Clinic . . . easily satif[ies] [the] burden to show a reasonable probability that Sulpizio's actions were 'force' within the meaning of the FACE Act." ECF No. 3-1 at 11-12.

Sulpizio responds that Plaintiff "is able to point to only a single two-year-old incident involving fleeting physical contact between Sulpizio and an AWC escort who had intervened to stop his lawful conversation with a woman who had willingly stopped her car," which Sulpizio argues, if it were sufficient to show a FACE violation, would create a "hair trigger standard for FACE liability." ECF No. 46 at 19-20. Therefore, Sulpizio concludes, Plaintiff has failed to show that it has a reasonable probability of eventual success in proving Sulpizio violated FACE for striking an AWC escort in April 2017. *Id.*

At the Preliminary Injunction Hearing, as described above, Plaintiff introduced into evidence the video of this incident from April 15, 2017. Sulpizio did not "c[o]me up to an escort volunteering at the Center" prior to making contact, as in *Cain*, but, instead, Escort Stiles walked down the driveway, approached the car, and confronted Sulpizio at the car. This then positioned Escort Stiles and Sulpizio literally nose to nose with each other with neither of them backing off. Certainly, it created a mutually volatile situation in which one of them or someone

15

else could have gotten hurt. The Court observed on film an instance where both parties, Escort Stiles and Sulpizio, were equally responsible for being in each other's face, neither backing off, and the contact was a consequence of this mutually close and brief encounter. At all times, Defendant Sulpizio was postured in the public right of way and never crossed the line into the private area.

This April 2017 incident is the only evidence that Plaintiff put forth to show that Defendant Sulpizio used force in violation of FACE. Force, along with threat of force and physical obstruction, is a necessary precedent to "intimidat[ing]" a person in violation of FACE because that person is obtaining or providing reproductive health services. 18 U.S.C. § 248(a)(1).

Furthermore, even if the Court were to find that Sulpizio engaged in "force" against Escort Stiles, the video shows that Sulpizio did not use force *because* Escort Stiles was providing reproductive health services, but instead used force in connection with a mutual argument over Sulpizio's positioning and the time he was spending exercising what he believed to be his Constitutional rights. Therefore, the Court does not find that Plaintiff has shown a reasonable probability of eventual success in proving that Defendant Sulpizio violated FACE by using force to intentionally injure or intimidate or attempt to injure or intimidate a person because that person is providing reproductive health services.

### 2. *Threat of Force*

At the Preliminary Injunction Hearing, Plaintiff introduced multiple videos into evidence showing Sulpizio speaking to AWC employees and volunteers while protesting at the AWC. The Court concludes that, although Sulpizio's comments to AWC employees and volunteers both were mean-spirited and bullying, and they demonstrated intimidating behaviors, they do not rise to the level of a threat of force as required by FACE.

Plaintiff contends in its Motion for Preliminary Injunction that "Sulpizio has verbally abused and harassed AWC personnel by calling them names such as 'baby killer,' 'lesbian sodomite,' 'fag,' and 'sodomite.'" ECF No. 64 at 9. "These statements," Plaintiff argues, "instill fear in AWC personnel," especially when "Sulpizio [later] directly addresses AWC staff with plainly intimidating comments such as, 'You know you can be killed for being a faggot.'" ECF No. 64 at 9. In its Motion for Preliminary Injunction, Plaintiff candidly questions "[w]hether this statement and others like it by Sulpizio constitute threats that are separately actionable under FACE" but argues, "they are nonetheless evidence of intent to intimidate and interfere with a person seeking or providing reproductive health care services." ECF No. 64 at 9.

At the Preliminary Injunction Hearing, Plaintiff's counsel stated that Sulpizio's comments show "that he's intentionally acting against Allentown

17

Women's Center personnel in an intimidating way because of their participation in providing reproductive health services," especially considering he had "admitted [that] morning [of the hearing] that he engages in his vulgar, obscene speech because he wants the Allentown Women's Center personnel to be uncomfortable in doing their work . . . so that they don't provide reproductive health services." ECF No. 80 at 87.

In contrast, Defendant Sulpizio contends that "threats of force" under FACE must be "true threats," which Defendant Sulpizio claims are "*only* 'those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals' even if the speaker does not subjectively intend to carry out the threat." ECF No. 43-1 at 15-16 (quoting *Virginia v. Black*, 538 U.S. 343, 359–60 (2003)). Defendant Sulpizio claims that "[t]his intent standard comports with what FACE is supposed to prohibit: the specific *intention* to 'intimidate' by 'plac[ing] a person in reasonable apprehension of bodily harm to him- or herself or to another.'" *Id.* (quoting 18 U.S.C. § 248). At the Preliminary Injunction Hearing, Sulpizio's counsel argued that Sulpizio's comments were "shocking, they're offensive, they're disgusting in some cases, but they're not threats." ECF No. 80 at 96.

18

FACE does not define threat of force, nor has the Third Circuit opined on how threat of force should be defined in the context of FACE. However, the Ninth and Tenth Circuits have found that "since FACE must be interpreted consistently with the First Amendment . . . th[e] term ['threat of force'] should be interpreted consistently with well-settled law defining 'true threats' which fall outside of the First Amendment's protections." *United States v. Dillard*, 795 F.3d 1191, 1198 (10th Cir. 2015). "The Supreme Court has defined 'true threats' to be 'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Dillard*, 795 F.3d at 1199 (quoting *Virginia v. Black,* 538 U.S. 343, 359 (2003)). "While a true threat must include 'a serious expression of an intent to commit an act of unlawful violence,' the speaker need not intend to actually act upon the threat." *Id.* (quoting *Black,* 538 U.S. at 359) (internal citations omitted).

Although the Third Circuit has not similarly found that "threat of force" in FACE must be interpreted consistently with the First Amendment, the Third Circuit has defined a "threat" in the context of the federal threat statutes, 18 U.S.C. §§ 871-880, as "a serious expression of an intention to inflict bodily harm." *United States v. Zavrel*, 384 F.3d 130, 138 (3d Cir. 2004).

At the Preliminary Injunction Hearing, Plaintiff pointed to three specific instances where it believe Sulpizio's comments constituted threats: (1) Sulpizio's

19

comments to Escort Smith, whom he had previously told had a laugh like a character from the television show Hee Haw, that the actor who played this character had died, (2) Sulpizio's comment to Employee 1 that you can be killed for being a faggot, and (3) Sulpizio's comments to an unidentified AWC employee that "your life doesn't matter," "you're a baby killer," and "come on back here, you cunt." ECF No. 80 at 110.

In response, Sulpizio argued that the comments "could not possibly be construed as an unconditional, unequivocal, immediate and specific threat of bodily harm and death," nor are they "statement[s] expressing intention to inflict bodily harm to someone of such nature as can reasonably induce fear." *Id.* at 112-113.

The Court does not condone language of this kind and believes that these types of comments escalate the hostile situation that currently exists at the AWC between the AWC staff and protestors and, if it continues, could ultimately lead to more confrontations like that between Escort Stiles and Sulpizio in April 2017. This contemptable language is irresponsible and repugnant. The Constitution anticipates that people will act responsibly, yet protects repugnant, repulsive, and irresponsible speech, as long as the speech does not involve force or threat of force. *See Gregg*, 226 F.3d at 267–68 ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct

20

communicates a message.") The Court finds that Sulpizio walks right up to the line with these statements in an attempt to provoke those to whom he is yelling to cross the line instead.

Although the Court finds these comments to be vulgar, upsetting, and entirely inappropriate, the Court does not find that they constitute "a serious expression of an intention to inflict bodily harm" as defined by the Third Circuit in order to constitute a threat of force in violation of FACE. [3] *Zavrel*, 384 F.3d at 138. Because the Court does not find that these comments constitute threats of force, which, as stated previously, are a necessary precedent to "intimidat[ing]" a person in violation of FACE because that person is obtaining or providing reproductive health services, the Court concludes Plaintiff has failed to show a reasonable probability of eventual success on its claim against Sulpizio for threats of force in violation of FACE.

### 3. *Physical Obstruction*

Plaintiff lastly contends that Sulpizio and Bogunovich engage in "physical obstruction" in violation of FACE by "walk[ing] slowly in front of cars arriving at the AWC clinic," and Sulpizio will "walk from the edge of the driveway . . . into

---

[3] The Court makes no comment, however, as to whether Sulpizio's actions would constitute harassment under Pennsylvania law, 18 Pa.C.S.A. § 2709(a).

21

the middle of the driveway, approaching cars from the side." ECF No. 3-1 at 13 (internal citations omitted).

"Physical obstruction" is defined in FACE as "rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). Plaintiff contends that "physical obstruction is not limited to 'bodily obstruction, but rather is broadly phrased to prohibit any act rendering passage to the facility unreasonably difficult.'" ECF No. 3-1 at 12. (quoting *Cain*, 418 F. Supp. 2d at 480). Plaintiff states that "[s]ome acts of physical obstruction that are 'sufficient to create liability under FACE' include 'obstructing or slowing access to driveways or parking lots' and 'blocking patients inside automobiles by standing close to car doors.'" *Id.* (quoting *Cain*, 418 F. Supp. 2d at 480).

In *Cain*, the court found physical obstruction where defendants "block and corner patients in an effort to impede their progress to the clinic so that the defendants have more time in which to 'counsel' them to leave the Center." *Cain*, 418 F. Supp. 2d at 481. In other cases, Plaintiffs argue, "[e]vidence of driveway obstruction was sufficient 'physical obstruction' under the FACE Act to support a preliminary injunction." ECF No. 3-1 at 13 (citing *United States v. Lindgren*, 883

22

F. Supp. 1321 (D.N.D. 1995)); *see also New York ex rel. Spitzer v. Kraeger*, 160 F. Supp. 2d 360, 376 (N.D.N.Y. 2001).

Defendant Sulpizio responds that Plaintiff failed to show physical obstruction because Plaintiff's "argument relies solely on a trio of trial court decisions from other circuits that lend no support to its claim that offering literature and conversing with drivers who stop voluntarily in the public right-of-way constitutes an actionable physical obstruction." ECF No. 46 at 19. Defendant Bogunovich responds that "it takes only a few seconds to walk slowly across the driveway," which Bogunovich contends cannot be considered physically blocking access to AWC. ECF No. 42 at 4.

As discussed in the Findings of Fact, Plaintiff introduced several videos at the Preliminary Injunction Hearing into evidence, which it claimed evidenced Defendants walking slowly in front of cars and blocking access to AWC. However, the Court does not find that the behavior evidenced on the videos constitutes physical obstruction under FACE.

First, Plaintiff's own witness, Escort Stiles, admitted that Bogunovich does not "stand right in the middle" of the entranceway, and "[h]e will get out of the way, but he does so slowly." ECF No. 79 at 31. Escort Stiles further admitted he had "never seen [Sulpizio] standing still and blocking a car," and he had "no memory of [Sulpizio] either standing in front of a car or seeing that a car was

23

coming in and slow walking to keep that person waiting there." *Id.* at 68, 71. Dr. Roe testified that Sulpizio does not stand "in front of the car," but "when someone's turning into [the] driveway," he will "step off the curb towards the path of the car." ECF No. 79 at 187.

Furthermore, the Court has found that the videos show the Defendants occasionally walking across the two entrances to AWC, but rarely, if ever, standing in the middle of the entrance. The Court finds that none of the videos evidence either Defendant rendering ingress or egress to the AWC unreasonably difficult or hazardous. *See* 18 U.S.C. § 248(e)(4). The Court therefore finds that Plaintiff has failed to show a reasonable probability of eventual success in proving that Defendants physically obstructed the entrance of the AWC in violation of FACE.

## VI.    CONCLUSION

"Unless **both** a 'reasonable probability of eventual success' and 'irreparable harm' are demonstrated, preliminary injunctive relief is not to be granted." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) (quoting *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982) (en banc)) (emphasis added). As the Court has not found that Plaintiff has met the requirement of "reasonable probability of eventual success," this Court finds that Plaintiff's Motion for a Preliminary Injunction against Sulpizio and Bogunovich is denied.

24

For the reasons stated above, Plaintiff's Motion for a Preliminary Injunction is denied. An appropriate order will follow.

**BY THE COURT:**

DATE: 8 - 28 - 2019

CHAD F. KENNEY, JUDGE

25

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLENTOWN WOMEN'S CENTER, INC.,
    Plaintiff,

v.

ANTHONY J. SULPIZIO

and

MARK MICHAEL BOGUNOVICH

and

JOHN DOE Nos. 1-5,
    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 5:19-cv-01571-CFK

## **TRANSCRIPT OF EXHIBIT 26 – CLIP OF SULPIZIO VIDEO #186**

Plaintiff Allentown Women's Center, Inc., at the request of the Court, has prepared the

following transcript of Exhibit 26 (Sulpizio Video #186), which was entered into evidence during

the hearing on Plaintiff's motion for preliminary injunction held on June 27, 2019. Counsel for

Mr. Sulpizio has reviewed the transcript and agreed that the transcription is accurate.

Respectfully submitted,

COZEN O'CONNOR

By: */s/ Jason A. Cabrera*

Debra S. Friedman (PA 65511)
Jason A. Cabrera (PA 315804)
1650 Market Street, Suite 2800
Philadelphia PA 19103
Phone: 215-665-2000
dfriedman@cozen.com
jcabrera@cozen.com

*Attorneys for Plaintiff*
*Allentown Women's Center, Inc.*

Dated: July 2, 2019

## TRANSCRIPT OF EXHIBIT 26 – SULPIZIO VIDEO #186

| Time on Clip In Evidence | |
|---|---|
| 0:00 | |
| 0:04 | SULPIZIO: How many babies did you kill today? |
| 0:06 | SULPIZIO: Your motha! |
| 0:08 | SULPIZIO: Your motha! |
| 0:12 | SULPIZIO: Your motha! |
| 0:18 | SULPIZIO: Your motha! |
| 0:21 | SULPIZIO: Give the finger! You think you're talking to your mother when you do that, right? |
| 0:25 | SULPIZIO: You're a baby killer! |
| 0:28 | SULPIZIO: You're a baby killer! |
| 0:30 | SULPIZIO: You licked your mother's cunt! |
| 0:32 | SULPIZIO: You licked your mother's cunt! |
| 0:34 | *(yelling heard but not discernible)* |
| 0:35 | SULPIZIO: Oh I'll tell you what! Fuck you! |
| 0:37 | WOMAN: "I'm-a shoot the fuck—" *(other yelling heard but not discernible)* |
| 0:39 | SULPIZIO: Fuck you! |
| 0:40 | SULPIZIO: You gonna shoot me? |
| 0:41 | SULPIZIO: You. You piece of shit! |
| 0:44 | SULPIZIO: Your life doesn't matter! Your life doesn't matter! |
| 0:47 | SULPIZIO: Your motha! |
| 0:48 | SULPIZIO: Your motha! Your motha! |
| 0:51 | SULPIZIO: Come on back here, you cunt! |

1